AVERY R. SCHILLER AND DOROTHY C. SCHILLER, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101380. Promulgated February 13, 1941.

*Avery R. Schiller* pro se.
*T. G. Histon, Esq.*, for the respondent.

### OPINION.

BLACK: The Commissioner has determined a deficiency of $470.93 in the income tax liability of the petitioners for the year 1936. This deficiency results principally from the determination by the Commissioner that a gain of petitioners in the taxable year of $3,400 was ordinary income and taxable in full, instead of capital gain taxable only to the extent provided in section 117 of the Revenue Act of 1936, as claimed by petitioners in their income tax return filed for the taxable year. The Commissioner, in his deficiency notice, stated with reference to his adjustment of this particular item as follows:

The Bureau holds that the assignment by you to the Public Service Company of New Hampshire of your right "in and to all dividends", and the delivery of your stock to the aforesaid company "to be held by it only as collateral to this covenant" does not constitute a sale of such stock, and therefore you would not be entitled to treat the amount received from the Public Service Company of New Hampshire in reimbursement of the loss sustained on this stock and deducted by you in the taxable year 1932 in the amount of $3,400.00 as coming under the provisions of section 117 of the Revenue Act of 1936. The amount of $3,400.00 is therefore 100% taxable in the year 1936 and not subject to the limitations under section 117 of the Revenue Act of 1936.

The petitioners by an appropriate assignment of error contest the foregoing action of the Commissioner. There were other adjustments made by the Commissioner which petitioners do not contest and which are, therefore, not in issue. Apparently petitioners have already paid this latter part of the deficiency.

The facts were stipulated and we adopt the stipulation as our findings of fact and state herein such of the facts as we deem necessary to an understanding of the issue to be decided.

The petitioners are husband and wife and reside at 1170 Union Street, Manchester, New Hampshire.

The petitioners duly filed a joint income tax return on the cash basis for the calender year 1936 with the collector of internal revenue for the district of New Hampshire, which showed a total tax due of $1,440.18.

The principal occupation of Avery R. Schiller, sometimes hereinafter referred to as petitioner, from 1930 to 1936, inclusive, was that of an executive of the Public Service Co. of New Hampshire, Manchester, New Hampshire, which company is a part of the New England Public Service Co. group. This latter group was during 1929, 1930, and 1931 related to the Middle West Utilities and other systems forming the so-called Insull group. Middle West Utilities organized a holding company known as Associated Employees Investments, Inc., the assets of which were stocks of Middle West Utilities, Insull Utilities Investment Co., and other related companies. The capital of Associated Employees Investments, Inc., was provided in part by employees of the various utility companies who had been solicited to purchase such stock. During the years 1930 and 1931 Avery R. Schiller purchased 140 shares of stock of Associated Employees Investments, Inc., from the Public Service Co. of New Hampshire at a total cost of $3,400.

For the taxable year 1932 Avery R. Schiller claimed as a deduction, in the joint return, his investment in the Associated Employees Investments, Inc., stock in the sum of $3,400. This deduction was claimed on the ground that the said stock was worthless in the taxable year 1932. The Commissioner of Internal Revenue allowed the amount of $3,400 as a loss on worthless stock in computing the petitioners' taxable income for that year.

In December 1936 the Public Service Co. of New Hampshire addressed a letter to its employees offering to pay to its employees an amount equal to the loss sustained by them on their stock purchases of Associated Employees Investments, Inc., provided the employees would assign to the Public Service Co. of New Hampshire their rights to the dividends, if any, on their stock in Associated Employees Investments, Inc. Avery R. Schiller accepted the offer and received the sum of $3,400 in the taxable year from the Public Service Co. of New Hampshire. A copy of the offer by the Public Service Co. of New Hampshire to its employees under which petitioner received the payment of $3,400 is as follows:

Associated Employees Investments, Inc. was organized in the latter part of 1930, through the Middle West Utilities Company, which at that time controlled the Public Service Company of New Hampshire. At the request of Middle West Utilities Company, the stock of Associated Employees Investments, Inc. was offered to all of the officers and employees of Public Service Company of New Hampshire and its subsidiary companies.

It appeared in 1932 that the stock of Associated Employees Investments, Inc. was probably worthless. The Company is now informed that the stock may now have some slight value, possibly about one dollar per share. Serious attention has been given to the losses suffered by employees of Public Service Company of New Hampshire and its subsidiary companies because of the purchase of the stock of Associated Employees Investments, Inc. with the result that Public Service Company of New Hampshire hereby offers to pay to each employee the amount of his or her loss on the investment made, either directly or through assignment of wages, in stock of Associated Employees Investments, Inc.

Employees are requested to sign the enclosed form of receipt and assignment. This receipt and assignment, together with the certificates for stock of Associated Employees Investments, Inc. should be presented to the company. The certificates of stock should not be signed in any place. Both the receipts and certificates should be delivered to Thomas L. Skinner, Treasurer of the Company, or to the local Manager. If any employee is unable to produce his certificate, he is requested to explain the circumstances to Mr. Skinner or to the local Manager. It is the intention of the company that arrangements will be made with all employees so that the amount of their losses in the investment in Associated Employees Investments, Inc. may be paid to them.

Petitioner, Avery R. Schiller, upon receipt of the $3,400 in question, made the following assignment to the Public Service Co. of New Hampshire:

KNOW ALL MEN BY THESE PRESENTS, that I, Avery R. Schiller residing at 1170 Union Street, Manchester, N. H., in consideration of the sum paid to me by Public Service Company of New Hampshire, of Manchester, New Hampshire, hereinafter acknowledged, hereby assign to the said Public Service Company of New Hampshire, its successors and assigns, all my right, title or interest, in and to all dividends which may be now due, or which may hereafter become due, either in liquidation or otherwise, on all shares of the capital stock of Associated Employees Investments, Inc., now owned by me, or to which I may in any way be entitled because of any payments made under my subscription or subscriptions therefor.

And I do hereby represent that I have subscribed and paid for 140 shares of said stock and I have also subscribed for 60 other shares of said stock on which I have paid $—— and for which certificates were never received.

And I do for myself, my heirs, executors, administrators, and assigns, covenant that if at any time I shall receive any dividends on any of said stock that then, and in that event, I will pay to Public Service Company of New Hampshire, or its successors or assigns, a sum equal to the dividends which I shall have received.

I am delivering, herewith, to Public Service Company of New Hampshire, to be held by it only as collateral to this covenant. all certificates for all shares of the capital stock of Associated Employees Investments, Inc. standing in my name 'except

No exceptions

I acknowledge receipt of $3,400 from Public Service Company of New Hampshire, and in consideration thereof I hereby release and discharge the said Public Service Company of New Hampshire and all its officers, directors, servants and employes from any and all claims, demands and actions, and causes of action, which I may now or hereafter have against them or any of them in respect to or in any way connected with or relating to said shares.

No dividends, liquidating or otherwise, have ever been paid on the stock of Associated Employees Investments, Inc., since 1931.

In schedule C of the petitioners' return for the taxable year 1936 the petitioners reported this transaction as a sale or exchange subject to the provisions of section 117 of the Revenue Act of 1936 and reported as taxable income therefrom the amount of $1,360.

On the facts which have been stated above, we think the Commissioner must be sustained.

In 1932 petitioner determined that the stock which he owned in Associated Employees Investments, Inc., was worthless and on the joint income tax return which petitioners filed for that year they deducted the full amount of the loss. It was not a capital loss deductible only in part but was an ordinary loss deductible in full. Cf. *Mont S. Echols*, 24 B. T. A. 1127; affd., 61 Fed. (2d) 191. Respondent treated petitioners' loss as an ordinary loss and allowed it in full as a deduction on petitioners' joint income tax return for 1932. In 1936 petitioner was reimbursed in full for the loss suffered in 1932. It has been held that when collections are made upon accounts or bonds previously charged off as bad debts in whole or in part, such amounts when collected represent taxable income. *Askin & Marine Co.*, 26 B. T. A. 409; affd., 66 Fed. (2d) 776; *Putnam National Bank*, 20 B. T. A. 45; affd., 50 Fed. (2d) 158. Likewise it has been held that taxes deducted in a prior year, where the deduction was allowed, are income to the taxpayer in the year when refunded. See *Estate of William H. Block*, 39 B. T. A. 338; affd., 111 Fed. (2d) 60, and cases there cited.

Petitioners do not dispute the soundness of the principle announced in the above cases and concede that the $3,400 in question was income when received in 1936, but they contend that it was income from the sale or exchange of capital assets and that the gain therefrom was taxable only to the extent of the percentages provided in section 117 (a) of the Revenue Act of 1936, printed in the margin.[1] It, of course, requires no citation of authorities to support the proposition that, if the $3,400 which petitioner received from the Public Service Co. of New Hampshire in 1936 represented the consideration received from a sale of stock which petitioners made to the Public Service Co.,

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 1 year;

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years:

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

it would be income received from the sale of capital assets and would be taxable at the rates provided in section 117 (a), *supra*.

However, we do not think that the facts in the instant case show that petitioner made a sale of the stock to the Public Service Co. What happened, we think, was substantially this: Petitioner and other employees of the Public Service Co. had been induced to invest their savings in stock of Associated Employees Investments, Inc., and in 1932 this stock became worthless because of the collapse of the Insull companies. Petitioner took his full loss in that year on his income tax return and the Commissioner allowed it. The Public Service Co. apparently felt itself under obligation to reimburse petitioner for his loss, and in 1936 it did so, and under the cases above cited petitioner was under legal obligation to return this $3,400 received in reimbursement as taxable income. Manifestly the Public Service Co. did not pay this $3,400 as the consideration for a transfer of the title to the stock. The stock had little, if any, value. As a matter of fact no transfer of the title to the stock has been made from petitioner to the Public Service Co. It is only held by the latter as collateral to the dividend covenant. All that has been transferred by petitioner to the latter is the right to receive any dividends paid, liquidating or otherwise, on the Associated Employees Investments, Inc., stock. None has ever been paid and, for aught the record shows, none will ever be paid. On this issue we sustain the respondent.      *Decision will be entered under Rule 50.*